# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **SHARON M.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:17-cv-01847-AJB** |
| **COMMISSIONER, SOCIAL** | : | |
| **SECURITY ADMINISTRATION,** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Sharon M. ("Plaintiff") brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.[2] For the reasons below, the undersigned **REVERSES**

_____

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entry dated June 21, 2017). Therefore, this Order constitutes a final Order of the Court.

[2]    Title II of the Social Security Act provides for DIB. 42 U.S.C. § 401 *et seq.* Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits for the disabled ("SSI"). SSI claims are not tied to the attainment of a particular period of insurance eligibility. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and

the final decision of the Commissioner **AND REMANDS** the case to the Commissioner for further proceedings consistent with this opinion.

## I.       PROCEDURAL HISTORY

Plaintiff filed an application for DIB on May 22, 2013, alleging disability commencing on February 21, 2012.  [Record (hereinafter "R") 158].  Plaintiff's application was denied initially and on reconsideration.  [*See* R64-75, 83-86].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R87].  An evidentiary hearing was held on March 17, 2016. [R35-54].  The ALJ issued a decision on April 29, 2016, denying Plaintiff's application on the ground that she had not been under a "disability" at any time through the date of the decision.  [R16-34].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's

_____

regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

AO 72A
(Rev.8/8
2)

request for review on March 31, 2017, making the ALJ's decision the final decision of the Commissioner. [R1-5].

Plaintiff then filed an action in this Court on May 22, 2017, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on September 8, 2017. [*See* Docs. 6, 7]. On October 17, 2017, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 10]; on December 14, 2017, the Commissioner filed a response in support of the decision, [Doc. 14]; and on December 26, 2017, Plaintiff filed a reply brief in support of her petition for review, [Doc. 16]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable

3

by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. 20 C.F.R. § 404.1512(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, if the

4

claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

AO 72A
(Rev.8/8
2)

# III.  SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance."  *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as

6

a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## IV.    STATEMENT OF FACTS[3]

### A.    *Background*

Plaintiff was forty-nine years old on the alleged onset date and fifty-three years old on the date of the ALJ decision. [R30, 39, 158]. She has a tenth-grade education

---

[3]    In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal. [*See* Docs. 10, 14, 16].

AO 72A
(Rev.8/8
2)

and previously worked as a cashier, server, housekeeping cleaner, front-desk clerk, and maintenance worker. [R48-49]. Plaintiff alleges that she is disabled due to a back disorder; problems walking, standing, and sitting; a sleep disorder; and high blood pressure. [R174].

B.    *Lay Testimony*

Plaintiff testified that she had been fired in February 2012 from the Housing Authority because her back problems prevented her from doing the work they had hired her to do. [R42]. She stated that she was medically able to drive, but she had not driven in two years because she did not have a car, and she took MARTA to the hearing. [R40-41].

Plaintiff used a walker at the hearing but testified that neither the walker nor a cane she used had been prescribed by a doctor. [R44]. She stated that it had been recommended that she have back surgery but she did go forward with the surgery because she was afraid: "[T]hey said they would have to break my bone and put pins and stuff in my back and I just wasn't ready for it. Mentally, I wasn't ready for it." [R45].

Plaintiff cooks, using a chair by the stove, and she shops for groceries using a one of the motorized chairs provided by the store. [R49, 201]. She lives with a

roommate in subsidized housing and lightly cleans her own room. [R49-50]. She reported that it was difficult to keep the apartment clean: "[I]f I work or clean all day I would have to rest for the next two days, so I clean a little at a time each day." [R201].

C.    *Administrative Records*

Plaintiff's earnings record shows earnings of $9,404.05 in 2012 and $9,423.00 in 2013. [R169]. For 2012, $2,394.05 of the earnings were from her longtime employer, Habitat Company, and were consistent with her report of having worked through February 2012. [R167]. The additional $7,010.00 reported in 2012 and the $9,423.00 reported in 2013 were posted as self-employment. [R167-68].

D.    *Medical Records*

Plaintiff presented to Joseph G. Saulsbury, M.D., at Concentra Medical Centers, on October 12, 2011, for follow-up on a work injury. [R244]. Plaintiff described stiffness and pain in her lower back that was mild and aching and did not radiate. [R244]. On examination, it was noted that Plaintiff had full range of motion with pain on flexion at ninety degrees and mild tenderness in the midline paraspinous muscles, and results were otherwise normal. [R244]. She was directed to continue physical therapy and a home exercise program and was restricted to no lifting, pushing, or

9

pulling greater than twenty pounds, and no bending greater than five times per hour. [R244].

Plaintiff saw physiatrist Matthew Richardson, M.D., of US MedGroup, on January 26, 2012, and February 2, 2012, regarding pain in her back and abdomen. [R224, 226]. Dr. Richardson noted that Plaintiff was using a single-point cane that she had purchased herself. [R224, 226-27]. He referred her to a neurosurgeon and limited her to no lifting, pushing, or pulling over five pounds of force; no prolonged standing or walking; and sitting at least fifty percent of the time. [R224, 227].

Plaintiff saw orthopedist Dr. Plas T. James, M.D., at US MedGroup, on February 21, 2012, with complaints of intractable low-back, left-buttock, and left-groin pain. [R221]. Upon examination, Dr. James found that Plaintiff walked with a crouched gait with her cane in her right hand; she had marked paraspinal spasms, right greater than left; her range of motion was limited; a straight-leg-raise test was positive on the left[4]; and Plaintiff's hip and lower-extremity strength was 4/5. [R221]. An x-ray and MRI of the lumbar spine revealed L4-5 and L5-S1 degenerative disc disease,

---

[4] Straight-leg-raising tests are done to test nerves and muscle strength and to assess the presence of tension on the sciatic nerve. WebMD, Back Pain Tests, https://www.webmd.com/back-pain/back-pain-tests#1 (last visited 9/13/18).

AO 72A (Rev.8/8 2)

moderate-to-severe arthropathy[5] at L4-5 and L5-S1, and left foraminal narrowing encroaching on the L4 nerve root. [R221-22]. Dr. James recommended that Plaintiff undergo L3-4, L4-5, and L5-S1 discography[6] and a CAT scan to evaluate discogenic pain and advised her to return to work but lift no more than five pounds, push or pull no more than five pounds, and sit fifty percent of the time. [R222].

Plaintiff returned to see Dr. James on April 3, 2012, with complaints of intractable low-back, left-buttock, and groin pain. [R218]. The physical-exam findings were unchanged, and Plaintiff was continued on modified duty with no lifting greater than five pounds, no bending, and no pushing or pulling greater than five pounds. [R218]. Notes also indicate that lumbar fusion was recommended, pending workers-compensation approval. [R218].

Plaintiff saw Dr. James again on May 15, 2012, with complaints of intractable low-back, left-buttock, and groin pain. [R216]. Physical-exam findings were

---

[5]  "Arthropathy" is a disease of the joints. J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine, Illustrated* A-542 (46th ed. 2012).

[6]  Discography uses imaging guidance to direct an injection of contrast material into the center of one or more spinal discs to help identify the source of back pain. It also is used to help guide the treatment of abnormal intervertebral discs. R a d i o l o g y I n f o . o r g ,   D i s c o g r a p h y   ( D i s c o g r a m ) , https://www.radiologyinfo.org/en/info.cfm?pg=discography (last visited 9/13/18).

AO 72A
(Rev.8/8
2)

unchanged, and it was noted that Plaintiff was not working. [R216]. Dr. James continued her on the same duty restrictions and continue to recommend lumbar fusion. [R216].

On October 8, 2012, Plaintiff saw Ken Sanford, M.D., for a consultative examination. [R254]. He observed that Plaintiff exhibited no muscle spasms, tenderness, or swelling in her back but that she reported pain on flexion and demonstrated tenderness in the left buttock. [R255]. He also noted that her gait was abnormal, she used a crutch, and she walked slowly, with a limp favoring the left leg; she was able to get on and off the exam table slowly and with difficulty; and she did not require an assistive device to ambulate. [R255, 259]. Dr. Sanford further noted that Plaintiff's upper- and lower-extremity strength was 5/5; straight-leg-raise testing was negative; she exhibited no sensory deficits; deep-tendon reflexes were 2+[7]; and the ranges of motion in Plaintiff's back and lower extremities were normal. [R256-58].

_____

[7] Deep-tendon reflexes are graded as follows: 0 = a tap elicits no response, which is always abnormal; 1+ = a tap elicits a slight but definitely present response, which may or may not be normal; 2+ = a tap elicits a brisk response, which is normal; 3+ = a tap elicits a very brisk response, which may or may not be normal; and 4+ = a tap elicits a repeating reflex, which is always abnormal. H. Kenneth Walker, Deep Tendon Reflexes *Clinical Methods: The History, Physical, & Laboratory Examinations* (3d ed. 1990), *available at* http://www.ncbi.nlm.nih.gov/books/NBK396 (last visited 9/13/18).

AO 72A
(Rev.8/8
2)

Dr. Sanford diagnosed back pain with degenerative disc disease at L4-5 and L5-S1, left foraminal narrowing at the L4 nerve root, L4-5 and L5-S1 facet arthropathy, and obesity, and he opined that Plaintiff would be limited in standing, walking, sitting, pushing, and pulling. [R256].

On November 29, 2012, Thomas German, M.D., a state-agency medical consultant, reviewed the record evidence and opined that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. [R59-61]. He further opined that she could stand and/or walk six hours per day, sit six hours per day, and push/pull twenty pounds occasionally and ten pounds frequently; could frequently climb ramps and stairs; must never climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, or crawl; could balance without limitation; and needed to avoid concentrated exposure to wetness and hazards. [R59-60].

On March 25, 2013, Plaintiff went to Grady Hospital for a primary care visit. [R267]. She reported that she was exercising by riding her bike but would stop when her back bothered her. [R268]. She also stated that she was taking ibuprofen and tramadol[8] for her back pain and had never been on any neuropathic medications.

---

[8]    Tramadol is in a class of medications called opiate (narcotic) analgesics and is used to relieve moderate to moderately severe pain. MedlinePlus, Tramadol, http://medlineplus.gov/druginfo/meds/a695011.html (last visited 9/13/18).

AO 72A
(Rev.8/8
2)

[R268].  On examination, she exhibited no spinal tenderness, but a straight-leg-raise test was positive on the left.  [R269].  She was advised to lose weight and walk three times per week.  [R270].

On May 5, 2013, Plaintiff returned to Grady for evaluation of shortness of breath. [R289].  Her musculoskeletal range of motion was normal, and she exhibited no edema or tenderness.  [R290].

On May 13, 2013, Plaintiff began physical therapy at Grady for back pain and neuropathic leg pain.  [R317].  She reported pain in her central lumbar region that she rated at ten on a ten-point scale and that she indicated was aggravated by prolonged walking and sitting.  [R317].  Her gait was independent with a cane, and it was noted that she was functional in her activities of daily living.  [R318].

On June 24, 2013, Plaintiff followed up with Grady.  [R324].  She reported that she had started exercising and had lost some weight but stopped when she developed a cold.  [R325].  She requested a handicapped parking pass, but the physician said, "I do not see a need for this, in fact pt needs to be more active," and he discussed the need for weight loss.  [R327].

AO 72A
(Rev.8/8
2)

Plaintiff followed up with Grady primary care on January 24, 2014, with complaints of a cough. [R332-33]. Her musculoskeletal and extremity exams were noted to be normal. [R333].

On March 27, 2014, Ramana Reddy, M.D., a state-agency medical consultant, reviewed the record and opined that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; could stand and/or walk six hours per day, sit six hours per day, and push/pull twenty pounds occasionally and ten pounds frequently; could frequently climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, or crawl; could balance without limitation; and needed to avoid concentrated exposure to hazards. [R70-73].

In a letter dated October 13, 2014, Barra Neary, M.D., an internal-medicine resident at Grady, wrote a letter to the Social Security Administration indicating that Plaintiff had a stooped posture when erect, with reduced spinal extension; had no vertebral tenderness to palpation; had difficulty mobilizing due to pain; exhibited reduced flexion, severely reduced lateral rotation, and lower-limb strength of 5/5 with no reduced sensation; and was using Motrin for pain relief. [R337]. Dr. Neary also completed a Disability Verification Form for HUD indicating that Plaintiff had a physical impairment that was expected to be of long-continued and indefinite duration,

substantially impeded her ability to live independently, and was of such a nature that the ability to live independently could be improved by more suitable housing; that the cause of Plaintiff's disability was "chronic back pain due to degenerative osteoarthritis"; that she had been diagnosed with axial low-back pain likely due to facet arthropathy; and that she was unable to work in any capacity. [R353].

On August 17, 2015, Plaintiff went to Mercy Care North Primary Care for evaluation of her asthma. [R369]. Notes indicate that she exhibited a normal musculoskeletal range of motion and had no edema. [R369].

On September 16, 2015, Plaintiff followed up with Mercy Care North Primary Care regarding diabetes, hypertension, and hyperlipidemia. [R372]. She denied any new concerns. [R372]. She exhibited normal musculoskeletal range of motion and no edema. [R373].

On October 21, 2015, Plaintiff went to Grady with complaints of right-knee pain and a request for refills of metformin,[9] amlodipine,[10] and hydrochlorothiazide.[11]

---

[9]     Metformin increases the body's response to insulin. Metformin is often used alone or with other medications, including insulin, to treat type 2 diabetes. MedlinePlus, Metformin, https://medlineplus.gov/druginfo/meds/a696005.html (last visited 9/13/18).

[10]     Amlodipine is a calcium channel blocker that is used alone or in combination with other medications to treat high blood pressure and chest pain.

16

[R405]. She reported that the knee pain was worse going down stairs and when lying in bed and that ibuprofen helped. [R405]. She had no other complaints or problems; denied back pain; and exhibited normal range of motion in the right knee, with no swelling, effusion, tenderness, or erythema; but was positive for arthralgias and a gait problem. [R405-06]. She was given refills for the requested medications; prescribed naproxen[12]; and referred for an x-ray of the right knee. [R407].

Plaintiff returned to Grady for medication refills on January 7, 2016. [R380]. She reported that she was feeling well and her only problem was back pain. [R380]. Her musculoskeletal range of motion was normal, and she exhibited no edema. [R381].

---

MedlinePlus, Amlodipine, https://medlineplus.gov/druginfo/meds/a692044.html (last visited 9/13/18).

[11]    Hydrochlorothiazide is a "water pill" and is used to treat high blood pressure and fluid retention caused by various conditions, including heart disease. It causes the kidneys to get rid of unneeded water and salt from the body into the urine. MedlinePlus, Hydrochlorothiazide, https://medlineplus.gov/druginfo/meds/a682571.html (last visited 9/13/18).

[12]    Naproxen is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, and stiffness. MedlinePlus, Naproxen, https://medlineplus.gov/druginfo/meds/a681029.html (last visited 9/13/18).

AO 72A
(Rev.8/8
2)

*E.      Vocational-Expert Testimony*

When asked about the working ability of a person of Plaintiff's age, education, and work experience, who could perform work at the light exertional level; would need to avoid climbing ropes, ladders, and scaffolds and to avoid unprotected heights; could occasionally climb ramps and stairs; must avoid crawling; could occasionally stoop; could frequently kneel, balance, or crouch; would be restricted to simple tasks; should avoid work environments with extreme temperatures; could perform occasional repetitive overhead reaching and pulling; and must avoid jobs that require extreme or fast-paced work environments or job pressures, such as job-production quotas, the vocational expert ("VE") testified that the person could work in the occupations of table worker, office helper, or assembler, and that the jobs exist in significant numbers in the national economy.  [R50-51].

## IV.   ALJ'S FINDINGS

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.   The claimant has not engaged in substantial gainful activity since February 21, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

18

AO 72A
(Rev.8/8
2)

. . .

3.    The claimant has the following severe impairments: low back pain; degenerative disc disease; stenosis; and obesity (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should avoid climbing ropes, ladders, scaffolds, and unprotected heights. The claimant should avoid crawling. The claimant can occasionally climb ramps and stairs, stoop, and [perform] repetitive overhead reaching and pulling. The claimant can frequently kneel, balance, and crouch. Because of occasional pain, the clamant is restricted to simple tasks. The claimant should avoid work environments temperature extremes, to include extreme heat and cold temperatures [sic]. The claimant should avoid jobs that require extreme or fast pace work environments, or job pressures, including job production quotas. With these restrictions, the claimant then will be able to focus and concentrate, maintain attention and concentration throughout the workday, and to complete a normal workday at a pace that would be considered adequate.

. . .

AO 72A
(Rev.8/8
2)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7. The claimant was born on February 4, 1963 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[R21-30].

AO 72A
(Rev.8/8
2)

The ALJ explained that he assigned "significant weight" to the opinion of Dr. Sanford, as Dr. Sanford had performed a complete physical examination, and that he assigned "some weight" to the opinion of Dr. Neary. [R28]. The ALJ also stated that he assigned "significant weight" to the opinions of the state-agency consultants, "as their opinions are consistent with the medical evidence of record that shows that the claimant is capable of light work." [R28]. The ALJ further explained that he found Plaintiff's allegations of limitations less than fully credible because Plaintiff "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual," such as "absolute rest in bed, back strapping, leg traction, or acupuncture"; she had not followed up on further aggressive treatment such as surgery; Plaintiff testified to cooking, grocery shopping, and cleaning, which "support[ed] the fact that she is able to do activities of daily living at a normal pace"; and her work activity postdating the alleged onset date indicated that Plaintiff's daily activities had, at least at times, been somewhat greater than Plaintiff reported. [R27].

## VII.  CLAIMS OF ERROR

Plaintiff raises multiple allegations of error. First, she contends that the ALJ erred in his consideration of Dr. Sanford's opinion, as the ALJ never resolved what Plaintiff deems an "obvious contradiction" regarding Plaintiff's need for an assistive

AO 72A
(Rev.8/8
2)

device.[13]  [Doc. 10 at 9].   Second, she argues that Dr. Sanford's and Dr. Neary's

opinions included greater limitations than the RFC and thus that the assignment of

weight to those opinions should have resulted in a more restrictive RFC.  [*Id.* at 9-10].

Third, Plaintiff contends that the ALJ erred by assigning significant weight to the

opinions of the state-agency reviewing physicians because they did not have the benefit

of reviewing records post-dating their opinions and they failed to reconcile the more

restrictive medical-source opinions they did review.  [*Id.* at 10-11].   Fourth, Plaintiff

faults the ALJ for failing to state the weight he assigned to the opinions of the treating

physicians at US MedGroup.  [*Id.* at 11-13].  Plaintiff argues that these errors are not

harmless because the treating and examining physicians were all of the opinion that

Plaintiff had significantly greater limitations than those incorporated into the RFC.

[*Id.* at 14-15].

     Additionally, Plaintiff argues that the ALJ held her to an improper standard when

he discounted her credibility on the grounds that she "ha[d] not generally received the

type of medical treatment one would expect for a totally disabled individual."

[*Id.* at 13-14].  She also contends that the ALJ's credibility determination relies on

_____

     [13]     Plaintiff had argued as an initial matter that the ALJ erred by accepting VE
testimony that was contrary to the *Dictionary of Occupational Titles*, [Doc. 10 at 6-9],
but she withdrew the argument in her reply brief, [Doc. 16 at 1].

AO 72A
(Rev.8/8
2)

misstatements of Plaintiff's testimony regarding her activities of daily living and on unwarranted assumptions about Plaintiff's post-onset earnings and her reasons for foregoing back surgery. [*Id.* at 15-18].

## A. Medical-Opinion Evidence

The Commissioner evaluates every medical opinion the agency receives, regardless of the source. 20 C.F.R. § 404.1527(c); *cf.* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 at *4 ("[T]he [Social Security] Act requires us to consider all of the available evidence in the individual's case record in every case.").[14] Thus, both examining and non-examining sources provide opinion evidence for the ALJ to consider in rendering a decision. 20 C.F.R. § 404.1527(c), (e). In determining the weight of medical opinions, the ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) evidence supporting the

---

[14] Although 20 C.F.R. § 404.1527 has been superceded and SSR 06-03p—as well as SSR 96-2p and SSR 96-5p—have been rescinded, they remain applicable to cases filed prior to March 27, 2017. 20 C.F.R. § 404.1527 (2017); *Corr. Not. of Rescission of Soc. Sec. Rulings, 96-2p, 96-5p, & 06-3p,* 2017 WL 3928297 (Apr. 6, 2017); *Not. of Rescission of Soc. Sec. Rulings, 96-2p, 96-5p, & 06-3p,* 2017 WL 3928298 (Mar. 27, 2017).

AO 72A
(Rev.8/8
2)

conclusions; (4) the consistency of the opinion with the record as a whole; (5) the medical expert's area of specialty; and (6) other factors, including the amount of understanding of disability programs and the familiarity of the medical source with information in the claimant's case record. 20 C.F.R. § 404.1527(c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," such that the reviewing court may determine "whether the ultimate decision on the merits is rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (punctuation omitted). Moreover, where an ALJ gives the opinion of a treating physician less than substantial or controlling weight, he must clearly articulate reasons establishing good cause for doing so. 20 C.F.R. § 404.1527(c)(2); *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. Appx. 56, 63 (11th Cir. Feb. 16, 2010) (citing *Lewis*, 125 F.3d at 1440); SSR 96-2p, 1996 WL 674188 at *5. Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Lewis*,

24

125 F.3d at 1440. A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984), and, in fact, the opinion of a consultative examiner is not entitled to any special weight, *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1365 (N.D. Ga. 2001). The opinions of nonexamining, reviewing physicians, "when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987); *accord Putman v. Soc. Sec. Admin., Comm'r*, 705 Fed. Appx. 929, 932 (11th Cir. Sept. 18, 2017) (quoting *Sharfarz*). Nevertheless, an ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sharfarz*, *id*.; *Putman*, *id*.

Plaintiff's arguments are well taken. As noted above, the ALJ gave Dr. Sanford's consulting opinion "significant weight," stating that Dr. Sanford found that "the claimant did not use any assistive device to ambulate." [R28]. Dr. Sanford's opinion actually stated, however, "Gait abnormal *with use of crutch* slow with limp favoring the left leg. She stands with weight bearing on her right leg. Patient is able to get on and off the examination table with difficulty and slow. Patient did not require an assistive device to ambulate." [R255 (emphasis added)]. Thus, while Dr. Sanford

25

found that Plaintiff did not *require* an assistive device to ambulate, he did observe that Plaintiff *used* one, [R255], consistent with Plaintiff's own report to Dr. Sanford that she uses a crutch to decrease the pressure on her legs and with Dr. Sanford's opinion that Plaintiff "would be limited in standing, walking, sitting, pushing or pulling," [R256]. The ALJ's statement that Dr. Sanford found that "the claimant did not use any assistive device to ambulate" is therefore a misstatement of the record and one that tends to overstate the ease with which Plaintiff was observed to ambulate. [*Compare* R28 *with* R255]. A decision cannot be said to be supported by substantial evidence when it relies on statements that are untrue. *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *6, 8 (M.D. Fla. Mar. 27, 2008) (An "ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion."); *Baker v. Barnhart*, No. 03 C 2291, 2004 WL 2032316, at *8 (N.D. Ill. Sept. 9, 2004) (same).

As to the opinion of Grady physician Dr. Neary, Plaintiff avers that the only opinion Dr. Neary expressed was in the medical statement completed for HUD in which he diagnosed axial low-back pain likely due to facet arthropathy and opined that Plaintiff was unable to work in any capacity. [Doc. 10 at 10 (citing [R353])]. Plaintiff contends that "[i]t does not follow that if the ALJ gave this opinion some weight, that she could perform various light jobs on a full-time basis." [Doc. 10 at 10]. In response,

26

AO 72A (Rev.8/8 2)

the Commissioner argues that Dr. Neary was a one-time examining physician and his opinion therefore was not entitled to great weight, [Doc. 14 at 17 (citing *McSwain*, 814 F.2d at 619)]; that a statement of disability is a decision reserved to the Commissioner and thus is not entitled to any significant weight, [Doc. 14 at 17-18 (citing 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183 at *2; *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 Fed. Appx. 875, 878 (11th Cir. May 16, 2013); *Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. Jan. 18, 2011); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986))]; and that because the ALJ considered Dr. Neary's observations and the other evidence of record, the ALJ's failure to weigh Dr. Neary's opinion of disability was harmless, [Doc. 14 at 18 (citing *Chapman v. Comm'r of Soc. Sec.*, 709 Fed. Appx. 992, 995 (11th Cir. Sept. 26, 2017))].

It first bears remark that the ALJ did not state any reason at all for assigning "some weight" to the opinion of Dr. Neary. [R28]. A court cannot draw post hoc conclusions from the evidence but instead must determine whether the ALJ properly applied the law and supported the decision with substantial evidence. *Baker v. Comm'r of Soc. Sec.*, 384 Fed. Appx. 893, 896 (11th Cir. June 23, 2010) ("If an action is to be upheld it must be upheld on the . . . bases articulated in the agency's order.") (citing *FPC v. Texaco, Inc.*, 417 U.S. 380, 397 (1974)); *Patterson v. Chater*,

27

983 F. Supp. 1410, 1413 (M.D. Fla. 1997) (holding that it is the duty of the ALJ—and not the court—to draw inferences from the evidence and resolve conflicts in the evidence). It is also notable that the Commissioner's assertion that Dr. Neary was a one-time examining physician contradicts the ALJ's express finding that Dr. Neary was a treating physician, [R28], a finding that is entirely in line with authority holding that a doctor who is a member of a medical-treatment team may be considered a "treating physician" within the context of the Social Security regulations when he transmits his own knowledge and opinions and those of the medical-treatment team. *See, e.g., Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003) (finding that psychiatrist fell into "the treating physician category" where he examined the claimant about a year before his report and was still employed to cure her); *Kittleson v. Astrue*, 533 F. Supp. 2d 1100, 1116-17 (D. Or. 2007) (finding doctor was treating doctor where he treated claimant briefly, was responsible for plaintiff's continuing care, and had direct contact with members of plaintiff's treatment team); *cf. Moser v. Barnhart*, No. Civ. 01-279(JRT/AJB), 2002 WL 459052, at *3 (D. Minn. Mar. 18, 2002) (finding no treating relationship because, although plaintiff went to doctor's clinic for twenty-five years, there was no evidence that the doctor reviewed plaintiff's record or was involved in claimant's treatment). Here, as Dr. Neary stated that Plaintiff was in

AO 72A
(Rev.8/8
2)

regular treatment at Grady and referred to records indicating that she had been treated at Grady on numerous previous occasions, [R337, 353], it appears that Dr. Neary's opinion should have been considered a treating opinion.

The ALJ also was not entitled simply to disregard Dr. Neary's opinion of disability. While it is true that the ultimate disability determination is reserved to the Commissioner, and even a treating physician's opinion that a claimant is completely disabled is not entitled to controlling weight, an ALJ may not wholly disregard a treating physician's opinion of disability on the mere ground that the opinion infringes on the ALJ's role in making the disability determination. 20 C.F.R. § 404.1527(d)(1) ("[W]e review all of the medical findings and other evidence that support a medical source's statement that you are disabled."); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (explaining that a treating physician's opinion of disability should be considered in conjunction with treatment notes and reports); *Williams v. Astrue*, No. CV406-19, 2008 WL 591288, at *3 (S.D. Ga. Mar. 3, 2008) ("[O]pinions from any medical source about issues reserved to the Commissioner *must never be ignored*, and [the] notice of the determination or decision must explain the consideration given to the treating source's opinion.") (quoting SSR 96-5p, 1996 WL 374183 at *1) (alterations and italics in *Williams*).

29

The Court also is not persuaded by the Commissioner's argument that pursuant to *Chapman*, the ALJ's error here was harmless. In *Chapman*, the court held that ignoring the treating physician's letter stating that the claimant was "permanently disabled" and therefore unable to serve on a jury was harmless because the opinion was conclusory and the medical notes did not support the opinion. *Chapman*, 709 Fed. Appx. at 995 (observing that the doctor listed some of the claimant's impairments and stated that she complained of pain but that the ALJ had also noted that the claimant had refused treatment options). Here, in contrast, in addition to stating that Plaintiff suffered from axial low-back pain likely due to facet arthropathy and that she rated her pain at eight on a ten-point scale, Dr. Neary also made objective findings that Plaintiff had a stooped posture when erect, had reduced spinal extension, had difficulty mobilizing due to pain, had reduced flexion, and had severely reduced lateral rotation, and he specified that Plaintiff's treatment plan included physical therapy and anti-inflammatory medication with facet injections. [R337, 353]. Grady treatment notes also reflect that in March 2013, Plaintiff was taking opiate analgesics for her pain, and a straight-leg-raise test was positive on the left, [R269]; in May 2013, she began physical therapy for back pain and neuropathic leg pain, her gait was independent with a cane, she rated her central-lumbar pain at ten on a ten-point scale, and she reported

30

AO 72A
(Rev.8/8
2)

that her pain was aggravated by prolonged walking and sitting, [R318]; and well after Dr. Neary issued his opinion, Plaintiff was observed to still have a gait problem, [R405], and back pain, [R381]. These are all findings that support Dr. Neary's opinion—or at least a greater level of limitation than that appearing in the RFC. Notably, Dr. Sanford's observations regarding Plaintiff's use of a crutch to reduce pressure on her legs also tend to lend support to Dr. Neary's opinion. [*See* R254-55].

The Court is also persuaded that the opinions of the state-agency reviewing physicians could not serve as substantial evidence to support the ALJ's decision because the reviewing physicians did not have the benefit of reviewing records post-dating their opinions and they failed to reconcile their opinions with the more restrictive medical-source opinions they did review. [*See* Doc. at 10-11]. Dr. Reddy, who issued the later of the two reviewing opinions, issued her opinion on March 27, 2014. [R70-73]. She therefore rendered her opinion without the benefit of reviewing Dr. Neary's notes indicating that Plaintiff had a stooped posture when erect, had reduced spinal extension, had difficulty mobilizing due to pain, exhibited reduced flexion and severely reduced lateral rotation, and had been diagnosed with chronic back pain due to degenerative osteoarthritis and axial low-back pain likely due to facet arthropathy, [R337, 353]; Dr. Neary's opinion that Plaintiff was unable to work,

31

[R353]; and Grady treatment notes indicating that Plaintiff still had arthralgias and a gait problem in October 2015, [R405, 407], and back pain in January 2016, [R381]. Additionally, it does not appear that Dr. Reddy reviewed Grady Hospital treatment notes showing that in March 2013, Plaintiff was taking opiate analgesics for her back pain and had a positive straight-leg-raise test on the left, [*compare* R72 *with* R269], and that in May 2013, Plaintiff began physical therapy for back pain and neuropathic leg pain, her gait was independent with a cane, she reported pain in the central lumbar region that she rated at ten on a ten-point scale, and she indicated that her pain was aggravated by prolonged walking and sitting, [*compare* R72 *with* R317-18], even though the treatment notes pre-dated Dr. Reddy's opinion. Likewise, Dr. Reddy's opinion includes no reference to Dr. Sanford's finding that Plaintiff would be limited in standing, walking, pushing, and pulling, [R256]; Dr. Salisbury's opinion that Plaintiff was limited to no lifting, pushing, or pulling greater than twenty pounds and no bending greater than five times per hour, [R244]; Dr. James's observations that Plaintiff walked with a crouched gait with a cane in her right hand, she had marked paraspinal spasms, right greater than left, she had an extension jerk, her range of motion was limited, and she had moderate-to-severe arthropathy and left foraminal narrowing, [R221-21]; or Dr. James's opinion that Plaintiff needed a lumbar fusion and should lift

32

no greater than five pounds, should push or pull no more than five pounds, and should sit fifty percent of the time at work, [R218, 222]—nor did Dr. Reddy make any attempt to reconcile her opinion with the opinions of any of the treating physicians. [*Compare* R70-73]. Accordingly, Dr. Reddy's opinion supplies scant basis for a determination that it was supported by substantial evidence.

The Commissioner contends that the error is harmless because the ALJ considered the evidence that Dr. Reddy did not. [Doc. 14 at 18-19 (citing *Cooper v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 803, 807 (11th Cir. June 6, 2013))]. The Court finds this argument unavailing, however, as *Cooper* does not appear to involve any misstatements of medical findings, nor does it appear that the ALJ in *Cooper* heavily relied on the opinion of a reviewing physician who ignored or otherwise failed to reconcile medical-source opinions that were clearly more restrictive than the reviewer's opinion. *See Cooper, id.* Moreover, even if the ALJ considered the evidence that Dr. Reddy apparently did not, an ALJ "cannot act as both judge and physician." *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1374 (N.D. Ga. 2006) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)).

For these reasons, the undersigned concludes that the ALJ reversibly erred in his consideration of the medical opinions.

33

AO 72A
(Rev.8/8
2)

*B.*     *Credibility*

Because the medical record was not properly considered, it necessarily follows that the credibility analysis also could not have been supported by substantial evidence. *See Foote*, 67 F.3d at 1560 (explaining that when a claimant attempts to establish disability through her own testimony of subjective symptoms, the ALJ must consider the claimant's testimony regarding the symptoms once she finds evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom). The Court also finds problematic the ALJ's reliance on Plaintiff's refusal to undergo surgery or receive certain types of conservative treatment, [R27 (discounting Plaintiff's credibility based on the fact that she did not follow up on the surgery recommendation and "[o]ther treatments such as absolute rest in bed, back strapping, leg traction, or acupuncture were not sought or received")], as there is no evidence that any conservative treatment other than the physical therapy, drug therapy, and injections Plaintiff tried were indicated for her condition, [R229, 268, 317], and it is not the "claimant's burden to undergo any and all surgical procedures suggested by her physician lest she be barred from disability

34

benefits," *McCarty v. Richardson*, 459 F.2d 3, 4 (5th Cir. 1972).[15]  For this reason, it is

also unclear whether the ALJ held Plaintiff to an improper standard when he discounted

her credibility on the grounds that she "ha[d] not generally received the type of medical

treatment one would expect for a totally disabled individual."  [R27].  Additionally,

there does not appear to be any support in the record for the ALJ's finding that

Plaintiff's testimony shows that she is able to do activities of daily living "at a normal

pace," [R27]; rather, the testimony indicates that Plaintiff greatly modifies her activities

to account for her claimed limitations, such as using a wheelchair to shop for groceries,

using a chair by the stove in order to be able to cook, and limiting herself to short bursts

of light cleaning.  [R49-50, 201].  *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264,

1267 (11th Cir. 2015) ("The ALJ has a basic duty to develop a full and fair record.");

*McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (holding that an

administrative decision is not supported by "substantial evidence" where the ALJ

acknowledges only the evidence favorable to the decision and disregards contrary

---

[15]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)
(en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

evidence).  Thus, the Commissioner must also reconsider Plaintiff's credibility upon remand.[16]

## VIII.  CONCLUSION

For the reasons above, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this opinion.  The Clerk is **DIRECTED** to enter final judgment in Plaintiff's favor.

**IT IS SO ORDERED and DIRECTED**, this the 13th day of September, 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

---

[16]    Because Plaintiff did not proffer any evidence indicating that the assumptions that the ALJ made about her post-onset earnings were in fact incorrect and therefore prejudicial to her, [Doc. 10 at 16-18], the Court does not find additional grounds for reversal in the ALJ's alleged error in citing her post-onset earnings as evidence that Plaintiff was not as disabled as she claimed.  *See McCloud v. Barnhart*, 166 Fed. Appx. 410, 417 (11th Cir. Jan. 25, 2006) ("[E]ven when the hearing was 'less than totally satisfactory,' remand is unwarranted unless the claimant can show prejudice.") (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th Cir. 1985)); *McCloud, id.*, ("[T]he claimant has the burden of producing evidence to support her disability claim.") (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)); *see also Townsend v. Comm'r of Soc. Sec.*, 555 Fed. Appx. 888, 891-92 (11th Cir. Feb. 7, 2014) (finding no basis for reversal where "even now, [the plaintiff] has not suggested what more the ALJ might have learned from further questioning"); *Kelley*, 761 F.2d at 1540-41 (holding that where a party fails to indicate what facts could have been submitted that would have changed the outcome, the party fails to show he was prejudiced).